UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CLARK STOECKLEY, et ano.,

                            Plaintiffs,

      -against-                                                         09 Civ. 7600 (LAK)

THE CITY OF NEW YORK, et al.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                      Wylie M. Stecklow
                      *Attorney for Plaintiffs*

                      Odile M. Farrell
                      Assistant Corporation Counsel
                      MICHAEL A. CARDOZO
                      CORPORATION COUNSEL OF THE CITY OF NEW YORK
                      *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This Section 1983 action is a product of bad judgment. The plaintiffs, on their own telling of the tale, exercised remarkably poor judgment in attempting to interfere in what they perceived to be a domestic dispute by throwing a bottle at the man involved instead of calling the police. The man involved, an off-duty police officer, exercised equally bad judgment, if plaintiffs are telling the truth, by approaching and then drawing his pistol on and threatening the plaintiffs.

The matter is before the Court on the motion of defendant The City of New York (the "City") for judgment on the pleadings dismissing the amended complaint.

*Facts*

*The March 7, 2009 Incident*

The Court for purposes of this motion accepts as true the well pleaded factual allegations of the complaint and the inferences reasonably drawn therefrom.

At 2 a.m. on March 7, 2009, plaintiffs Clark Stoeckley and Jason Nicholas[1] were sitting near the rear entrance of a New York University residence hall when they saw defendant Daniel Velazquez "in what appeared to be a confrontation with a female."[2]  Out of professed "concern for the well being of . . . Velazquez['s] . . . female associate and in an attempt to distract . . . Velazquez . . . , threw an empty bottle into the center of Thirteenth Street."[3]  Velazquez immediately crossed Thirteenth Street, walked toward Stoeckley and Nicholas, and asked "who threw the bottle."[4]  Stoeckley and Nicholas remained silent whereupon Velazquez "picked up a nearby cup of tepid coffee and poured it on . . . Stoeckley."[5]  Nicholas then admitted that he had thrown the bottle, whereupon Velazquez removed a firearm from his waistband, pointed the weapon

---

[1] Mr. Nicholas is not a stranger to this Court. *See, e.g.*, *Nicholas v. Tucker*, No. 95 Civ. 9705 (LAK), 2001 WL 228413 (S.D.N.Y. Mar. 8, 2001), *aff'd*, 40 Fed. Appx. 642 (2d Cir. 2002).

[2] Am. Compl. ¶¶ 24-25.

[3] *Id.* ¶ 26.

[4] *Id.* ¶¶ 27-28.

[5] *Id.* ¶¶ 29-30.

and Stoeckley and Nicholas, and threatened to kill them.[6]

At that point, Velazquez's companion "physically attempted to dissuade [him] . . . from continuing this conduct" by putting her arms around him and urging him to lower his weapon and leave.[7] Velazquez then lowered his weapon and walked away. But he turned, came back to Stoeckley and Nicholas and, before finally leaving the scene, told them that he would be "coming back to kill each of" them.[8]

At that point, Stoeckley and Nicholas called 911 and then followed Velazquez, observing him enter a grocery store.[9] Two police cars arrived. Nicholas told the officers that "the assailant" was in the grocery store. Some of the officers entered, spoke to Velazquez, and then exited the store, telling plaintiffs "Don't worry, he's a cop."[10] Stoeckley and Nicholas complained that the fact that Velazquez was a member of the police department was not relevant to the fact that he had pointed a weapon at and threatened them. In due course, a supervising officer told the other officers to hold Velazquez and not to let him leave.[11]

Following the incident, Velazquez was relieved of his firearm, placed on modified desk duty, and investigated by the Internal Affairs Bureau ("IAB") of the New York City Police

---

[6] *Id.* ¶¶ 31-32.

[7] *Id.* ¶¶ 33-34.

[8] *Id.* ¶¶ 35-38.

[9] *Id* ¶¶ 39-41.

[10] *Id.* ¶¶ 43-47.

[11] *Id.* ¶¶ 48-49.

Department.[12] The pleading is silent as to the outcome of the investigation.

*The Complaint*

  The amended complaint contains six claims for relief against Velaszuez and the City:

    1. Assault and excessive use of force.

    2. Intentional infliction of emotional distress.

    3. Negligence.

    4. A *Monell* claim against the City of New York.

    5. Negligent hiring of Velazquez by the City.

    6. Attorneys' fees under 42 U.S.C. § 1988.

The City, as noted, seeks judgment on the pleadings dismissing the amended complaint as to it.

*Discussion*

  Although the amended complaint is none too clear on the point, I assume for purposes of this motion that the first three claims for relief are asserted both under 42 U.S.C. § 1983 as alleged violations of plaintiffs' constitutional rights and on state law theories. The City argues that any Section 1983 claims against it are insufficient in law, that any state law claims are foreclosed by plaintiffs' failure to comply with the provisions of New York's General Municipal Law, and that the Court in any case should exercise its discretion against asserting supplemental jurisdiction to entertain any state law causes of action.

---

[12] *Id.* ¶¶ 51-54.

*The Section 1983 Claims*

    *Color of Law*

In order to have stated a Section 1983 claim against Velazquez, plaintiffs must have alleged that he (1) deprived them of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) did so under color of law.[13] The City contends that plaintiffs have satisfied neither element. As I conclude that the amended complaint fails to allege facts which, if credited, would permit a finding that defendant Velazquez acted under color of state law, it is unnecessary to address the question whether plaintiffs have alleged a deprivation of any federally protected right, privilege or immunity.

I begin with the allegations of the amended complaint. Paragraph 12 alleges that Velazquez's "actions and conduct were taken in and during the course of his duties and functions as New York City Police Officers [*sic*] and as agents and employees [*sic*] of the City of New York and incidental to the otherwise lawful performance of his duties and functions as a New York City Police Officer . . . ." Likewise, paragraph 22 asserts that he "[d]uring all times relevant in this Complaint, . . . [was] acting under color of law." But these are assertions of legal conclusions rather than of fact. I therefore am not obliged to accept them as true for purposes of the motion.[14] And the amended complaint contains no facts supporting them. For example, there is no allegation that Velazquez was in uniform, that he was on duty, or that he exhibited a badge or identified himself

---

[13] *E.g., Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986); *Corneyo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010); *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994).

[14] *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("not bound to accept as true a legal conclusion couched as a factual allegation").

as a police officer[15] during the entire course of the incident.  To the contrary, the complaint suggests strongly that the first plaintiffs learned that Velazquez was a police officer was after the incident had concluded and the officers who responded to the 911 call came out of the grocery store into which Velazquez had gone and said to the plaintiffs, "Don't worry, he's a cop."

>   As the Second Circuit has written:
>
>   "'The Supreme Court has broadly interpreted the color of law requirement, concluding that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law."'  *United States v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) (further quotation marks omitted; alteration in *Walsh* )).  The fact that someone holds an office or otherwise exercises power under state law does not mean, of course, that any wrong that person commits is 'under color of law.'  'It is clear that under "color" of law means under "pretense" of law.  Thus acts of officers in the ambit of their personal pursuits are plainly excluded.'  *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).  As we have observed, however, 'there is no bright line test for distinguishing personal pursuits from actions taken under color of law.'  *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir.1994) (quotation marks omitted)."[16]

Indeed, it applied this standard to the use of a firearm by an off-duty police officer in *Pitchell*, upholding summary judgment dismissing the action for want of state action as to the officer, who had gotten drunk while off duty and then shot another individual while the two were drinking in the

---

[15] After all of plaintiffs' papers in opposition to the motion were submitted, plaintiffs' counsel requested leave to file a surreply memorandum to bring to my attention a memorandum said to have been written by an IAB investigator, who purported to quote defendant Velazquez as having denied that he ever drew his firearm or poured coffee on plaintiffs and as having decided to identify himself to plaintiffs as a police officer to defuse the situation.  As I decline to consider materials outside the amended complaint in deciding this motion for judgment on the pleadings, I decline leave to file a surreply.  There will be time enough to consider any new allegation that Velazquez identified himself as a police officer if and when plaintiffs seek leave to file a second amended complaint and propose to make such an allegation in a manner subject to the requirements of FED. R. CIV. P. 11.

[16] *United States v. Giordano,* 442 F.3d 30, 42-43 (2d Cir. 2006) (footnotes omitted).

officer's apartment along with other individuals.[17]

Plaintiffs nevertheless argue that the fact that Velazquez was off duty at the time of the incident is not conclusive of the color of law issue, which is true enough, and that he acted under color of law because NYPD Patrol Guide Procedure No. 204-08 required him, unless otherwise directed, to be armed at all times when in New York City.[18] Putting to one side the fact that the factual assertion concerning the Patrol Guide does not appear in the amended complaint, it is beside the point.

*Pitchell* and *Bonsignore* rejected substantially the same argument. In *Pitchell,* for example, the plaintiff relied upon a Hartford Police Department regulation that required the officer to be alert at all times, whether on or off duty, and to go to the assistance of victims for the purpose of preventing crime. The plaintiff there argued that the officer therefore was acting under color of law when he shot the victim because the defendant "was acting as a police officer" from the "moment [he] picked up the gun."[19] But the Court of Appeals rejected the argument on summary

---

[17] 13 F.3d at 548; *see also, e.g.*, *Bonsignore v. City of New York*, 683 F.2d 635, 638-39 (2d Cir. 1982) (no state action where officer shot his wife with off duty revolver despite fact that officer required to carry gun at all times); *Claudio v. Sawyer*, No. 08 Civ. 8994 (DC), 2009 WL 4929260, at *5-6 (S.D.N.Y. Dec. 23, 2009); *McNamara v. City of New York*, No. 06 Civ. 5585 (LTS), 2009 WL 735135, at *3 (S.D.N.Y. Mar. 20, 2009) (off-duty officer who engaged in verbal dispute and physical alternation with plaintiff before drawing weapon and showing his badge did not act under color of state law).

[18] Pl. Mem. 16.

Plaintiffs have submitted a variety of material that does not appear in the amended complaint. As noted above, I decline to consider it, which would require that I convert the motion into one for summary judgment. I mention the Patrol Guide to point out that it would not alter the result even if it were considered.

[19] 13 F.3d at 547.

judgment.

Likewise, in *Bonsignore*,[20] which is even more closely on point, the Court of Appeals affirmed the denial of a motion for leave to amend on the ground of futility where the plaintiff sought to make a Section 1983 claim based on an off-duty shooting by a New York City Police Department officer of his wife. In so doing, it held that the officer "was not acting under color of state law since his actions were not committed in the performance of any actual or pretended duty, . . . but were performed in the ambit of (his) personal pursuits."[21]

So too here. As far as the amended complaint discloses, Velazquez had a dispute with a woman at 2 a.m. It contains no suggestion that he was on duty,[22] in uniform, exhibited a badge, or identified himself to the plaintiffs as a police officer. None of his alleged actions up until the moment he was accosted by the responding officers in the grocery store, which was well after the incident had ended, was "committed in the performance of any actual or pretended duty . . . , but were performed in the ambit of (his) personal pursuits."[23] All of plaintiffs' Section 1983 claims therefore fail to state a claim upon which relief may be granted.

---

[20] 683 F.2d 635.

[21] *Id.* at 638-39 (quotation marks and citations omitted).

[22] Plaintiffs' memorandum effectively concedes that he was not. Pl. Mem. 15-17.

[23] 683 F.2d at 638-39 (quotation marks and citations omitted); *accord McNamara,* 2009 WL 735135, at *3.

9

Monell

Even if the amended complaint stated a Section 1983 claim against Velazquez,[24] it would be sufficient as against the City only if it alleged that a deprivation of plaintiffs' constitutional rights was caused by an official policy or custom of the City.[25]  A plaintiff must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."[26]  This causation element of a Section 1983 claim against a municipality can be divided into two parts.[27] "First, the plaintiff must predicate his recovery on some particular action taken by the city, as opposed to an action taken unilaterally by a nonpolicymaking municipal employee."[28]  Second, the plaintiff must prove that the policy or custom caused the deprivation of his constitutional right.  A plaintiff can make the former showing in several different ways depending on the facts of the case. Allegations are sufficient in this respect if they show (1) that the unconstitutional action implemented an official City policy,[29] (2) that an official or officials responsible for establishing City policy with respect to the subject matter in question took action or made a specific decision that

---

[24] In light of my conclusion as to the lack of sufficient allegations of color of law, I have no need to consider whether the amended complaint would sufficiently have alleged a deprivation of federally protected rights if the color of law requirement had been satisfied.

[25] *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 692-94 (1978); *Dwares v. City of New York,* 985 F.2d 94, 99 (2d Cir. 1993).

[26] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

[27] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829-30 (1985).

[28] *Id.* at 829.

[29] *Monell,* 436 U.S. at 690.

caused the alleged violation of plaintiffs' constitutional rights,[30] (3) that the unlawful custom or practice by subordinate officials is so manifest or widespread as to imply the constructive acquiescence of policymaking officials,[31] or (4) that a municipality's failure to train or supervise "amounts to deliberate indifference to the rights of persons with whom the police come into contact."[32]

The amended complaint is filled with allegations that attempt to satisfy this standard. But they fall woefully short. For example, paragraph 76 alleges that the City and the NYPD "have failed to take steps to terminate the above detailed practices" without regard to the fact that no practices are detailed above save for the allegations concerning this single incident. Paragraph 79 alleges that the City "had in effect de facto policies, practices and customs that were a direct and proximate cause" of Velazquez's conduct, but the amended complaint nowhere states what those de facto policies were. And it goes on. What is missing, however, is any specific, non-conclusory allegation of fact which, if credited, would permit a reasonable trier of fact to conclude that Velazquez's alleged actions in the early morning of March 7, 2009, were caused by some particular action or policy of the City. Accordingly, even if the amended complaint adequately alleged a Section 1983 violation by Velazquez, it nevertheless would not state a legally sufficient Section 1983 claim against the City.

---

[30] *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482-83 (1986).

[31] *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) (plurality opinion); *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir. 1992).

[32] *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).

*The State Law Claims*

Section 50-e(1)(b) of the New York General Municipal Law requires that a plaintiff asserting a claim against a municipality or its officer or employee make a timely notice of claim. Sections 50-e and 50-i provide in substance that a tort claimant serve a notice of claim on the City within 90 days after the incident giving rise to the claim and that the complaint allege that at least 30 days have elapsed since service of the notice and that adjustment or payment has not been made.

The amended complaint contains no such allegations. The fact that the NYPD IAB evidently conducted an investigation of the March 7, 2009 incident shortly after it occurred does not excuse the failure to file a timely General Municipal Law claim with the City Comptroller, whose responsibilities with respect to such claims are decidedly different from those of the IAB.[33]

I note also that plaintiffs served a notice of claim on March 19, 2010, more than nine months after it was due. They now seek leave to serve a late notice of claim, evidently in an effort to validate the March 19, 2010 service. But the belated service of the notice of claim cannot revive the claims they lost, both because the 90 day time limit on service had expired and because the service of a late notice without leave of court is without effect.[34] In any case, leave to serve a late notice of claim may be granted only by a state court.[35]

---

[33] *See, e.g.*, *Nieves v. New York City Police Dep't*, No. 07 Civ. 5751 (SAS), 2010 WL 330205, at *4 (S.D.N.Y. Jan. 26, 2010); *Olsen v. County of Nassau,* No. 05 Civ. 3623 (ETB), 2008 WL 4838705, at *2-3 (E.D.N.Y. Nov. 4, 2008).

[34] N.Y. GEN. MUN. L. §§ 50-e(1)(a); 50-e(5), 50-i(1)(a); *Angulo v. City of New York,* 48 A.D.3d 603, 604, 852 N.Y.S.2d 355, 355 (2d Dep't 2008).

[35] N.Y. GEN. MUN. L. § 50-e(7); *Olsen,* 2008 WL 483705, at *3 (collecting cases).

12

*Conclusion*

The motion of defendant the City of New York for judgment on the pleadings dismissing the complaint as to the City [DI 14] is granted.

SO ORDERED.

Dated:   March 31, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)